UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joshua Olin Madson,<br><br>            Plaintiff,<br><br>  -against-<br><br>American International Group, Inc,<br><br>            Defendant. | Civil Action No. 1:23-cv-01482<br><br>Hon. Jennifer L. Rochon |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN INTERNATIONAL GROUP'S MOTION TO DISMISS**

## **PRELIMINARY STATEMENT**

*Pro se* Plaintiff Joshua Madson ("Madson") in his Second Amended Complaint ("Complaint") (ECF No. 28), asserts claims against Defendant American International Group, Inc. ("AIG") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§8-101 to 131 ("NYCHRL"). Madson's initial Complaint was dismissed *sua sponte* by Hon. Laura Swain in an Order that identified specific deficiencies that had to be remedied in any Amended Complaint. Despite those instructions, the Second Amended Complaint remains wholly deficient. Madson continues to assert Title VII claims, while admitting a failure to exhaust administrative remedies. He alleges discrimination based on race in violation of Section 1981, and race and religion in violation of the NYSHRL and NYCHRL, but fails to allege any facts that would plausibly support an inference of discrimination. To the contrary, while much of the Complaint is incoherent, thereby failing to give AIG the required notice of the claims it must answer, the attachments to the Complaint affirmatively demonstrate the absence of any discrimination on the part of AIG.

Finally, the Complaint fits comfortably within the category of *pro se* complaints that courts regularly dismiss as fanciful, fantastic and delusional. For example, Madson accuses AIG of imprisoning him and subjecting him to torture, but the Exhibits he attaches to the Complaint in support of this claim demonstrate that Madson was actually subject to involuntary commitment and medication on the order of a Texas court after the court concluded he was likely to cause serious harm to others following the complaint of a Texas health care provider. Compl., Ex. 4 (ECF 28). Madson further claims that senior AIG executives conspired to assassinate him with the assistance of domestic special interest groups, including the CIA, all in an attempt to prevent him

from starting a new entrant in the reinsurance market. In short, the Second Amended Complaint sadly reflects the ramblings of an individual who continues to suffer from the serious mental illness that is objectively evidenced in the attachments to his own pleading. While AIG has empathy for a mentally ill person struggling to make sense of his feelings and beliefs, for the reasons set forth below, the Second Amended Complaint should again be dismissed, this time with prejudice.

## FACTUAL BACKGROUND

The Second Amended Complaint consists of almost seventy pages, including a lengthy single spaced narrative and 16 Exhibits. While the narrative is largely incoherent, certain facts can be discerned from the Exhibits. Madson commenced his employment in Illinois with Validus America, Inc., a reinsurance carrier acquired by AIG, in June 2019. Compl. at 17.[1] He assisted the company with risk pricing and portfolio modeling. *Id*. In February 2022, he alleges that he left his Illinois home to seek "political asylum" in New York while facing assassination attempts and divorce proceedings that "turned against him." *Id.* at 22. He also apparently disappeared from AIG. *Id.* On February 17, 2022, AIG sent Madson a letter inquiring about his absence from work. Compl., Ex. 14. On February 22, 2022, the Head of Employee Relations emailed Madson a second letter concerning his employment with AIG. *Id.* The letter indicated that Madson had been absent since February 14, 2022 and that the absence was not approved. *Id.* The letter also indicated that Madson did not contact his manager regarding his absence, thus, he was deemed to have abandoned his position within the organization. *Id.* That is consistent with AIG's policy on job abandonment, which occurs where an employee is absent without management notification for over three consecutive days. *Id.*

---

[1] Citations are to ECF page number.

The letter provided Madson an opportunity to notify AIG of any extenuating circumstances before his slated termination on February 21, 2022, and AIG further delayed pursuing termination to give Madson an opportunity to contact Employee Relations. *Id.* On March 1, 2022, Madson contacted several managers, but only told them he was apartment hunting and would update them when able to. *Id.* This was the first AIG heard from Madson since February 14, 2022. *Id.* Employee Relations sent Madson another email requesting that Madson contact them before contacting other employees internally. *Id.* However, Madson did not contact Employee Relations to discuss the job abandonment—as instructed—and AIG never heard back from Madson. *Id.* Therefore, Madson's employment was ultimately terminated for job abandonment. *Id.*

On February 21, 2023, Madson, who identifies his race as Jewish and his religion as Islam, initially brought this action against AIG's then General Counsel, Lucy Fato and its CEO, Peter Zaffino, alleging that they discriminated against him while he was employed at Validus Research in Manhattan. *See* Initial Complaint (ECF 1). On June 12, 2023, this Court dismissed the Complaint *sua sponte*, but granted Madson leave to file an amended complaint that complies with the standards set forth in its Order to Amend. *See* Order to Amend (ECF 6). These standards included exhausting administrative remedies and providing more than conclusory allegations that suggest race was a "but-for" cause for AIG's actions. *Id.* On August 3, 2023, Madson filed an Amended Complaint against AIG, Fato and Zaffino, but the Amended Complaint was never served. Madson then sought a default judgment, which was rejected by the Clerk for lack of service. *See* Amended Complaint (ECF 10); *see also* ECF 11-14, 23-26. On November 28, 2023, Madson's appeal of Judge Swain's June 12, 2023 order was dismissed by the Second Circuit *sua sponte*. *See* Mandate (ECF 21). On February 7, 2024, Madson filed a Second Amended Complaint, this time only against AIG, and effected service on AIG's authorized agent. *See* Complaint (ECF 28). AIG now moves to dismiss.

3

## ARGUMENT

### A.   Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully"; mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* Thus, the Court only accepts as true "well-pleaded factual allegations." *Id.* at 679.

It is also well established that a district court may dismiss a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Komatsu v. City of New York*, No. 20 Civ. 9354 (ER), 2021 WL 3038498, at *1 (S.D.N.Y. July 16, 2021) (quoting *Robinson v. Matos*, No. 97 Civ. 7144 (TPG), 1999 WL 225938, at *1 (S.D.N.Y. Apr. 19, 1999)). Even *pro se* complaints are subject to dismissal under such circumstances. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (affirming *sua sponte* dismissal of 15-page, 88-paragraph *pro se* complaint for clear violations of Rule 8); *Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. 1991) (stating that the policy requiring courts to liberally construe *pro se* complaints "does not mandate that a court sustain every *pro se* complaint even if it is incoherent, rambling, and unreadable"). Additionally, a complaint should be dismissed as frivolous if the facts it purports to allege are simply unbelievable. *See Igarashi v. Skulls & Bones*, 438 F. App'x 58, 59 (2d Cir. 2011) (quoting *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)) ("Even a well-

4

pleaded complaint may be dismissed as factually frivolous 'if the sufficiently well-pleaded facts are clearly baseless-that is, if they are fanciful, fantastic, or delusional.'").

      B.    <u>**Madson Failed to Exhaust Administrative Remedies**</u>

In the Order dismissing his initial Complaint, Judge Swain specifically instructed Madson that he could not assert a claim for violation of Title VII without exhausting administrative remedies by filling a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtaining a right to sue letter from the Commission. *See* Order (ECF 6). Such requirements are well established and are properly raised at the motion to dismiss stage. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). "Dismissal under [Rule] 12(b)(6) is appropriate when a defendant raises a statutory bar [like failure to exhaust] as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)).

Madson has not pled that he filed a *charge* with the EEOC or that he received Notice of Right to Sue. Instead, he attached an unsworn email with the subject "EEOC Filing (New York Office)" from September 29, 2022 in place of a formal EEOC Charge. *See* Compl. at 15. Moreover, he expressly admits that he has not received a Notice of Right to Sue from the EEOC. *See Id.* at 13. Because Madson did not exhaust his administrative remedies under Title VII, and this failure is clear from the face of the Complaint, his Title VII claim should be dismissed.

      C.    <u>**Madson Failed to Plead Plausible Claims of Racial or Religious Discrimination**</u>

"A plaintiff cannot establish a prima facie case [of discrimination under Title VII] based on purely conclusory allegations of discrimination, absent any concrete particulars." *Moccio v.*

5

*Cornell Univ.*, 889 F. Supp. 2d 539, 572 (S.D.N.Y. 2012) (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) (internal quotation marks omitted)), *aff'd*, 526 F. App'x 124 (2d Cir. 2013). The same is true for Section 1981 and other anti-discrimination laws. *Hines v. Port Authority of New York & New Jersey*, No. 94 Civ. 5109 (NRB), 2000 WL 420555, at *5 (S.D.N.Y. Apr. 18, 2000) ("Mere conclusory allegations [of discrimination] do not suffice to support a § 1981 claim"). To sufficiently plead discrimination, a plaintiff must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (under the NYSHRL or NYCHRL plaintiff must allege facts at the pleadings stage plausibly supporting at least "a minimal inference of discriminatory motivation.").

   Madson does not allege *any* specific facts suggesting that an adverse employment action was taken against him on the basis of his protected characteristics or that he was subject to a hostile work environment. At most, Madson either references disagreements with coworkers having nothing to do with race or religion or asserts in conclusory fashion that comments were made to him about his religion and race without identifying anything that was said. *See, e.g.*, Compl. at 19 ("comments [IT] made to plaintiff in the office . . . ."); *Id.* at 20 ("Kevin intimidated and threatened plaintiff directly on a conference call . . ."); *Id.* ("[Doug and Roger] made frequent attempts to induce plaintiff to anxiety and/or panic attack during meetings . . ."); *Id.* ("[Jeffrey] directly accosted plaintiff over his religious beliefs"); *Id.* at 21 ("executive leadership . . . [used] innuendo targeting plaintiff's religious beliefs and family arrangements.").

   Moreover, the Exhibits provided by Madson directly contradict his claim that anything was said to him related to race or religion. For example, Madson states that Exhibit 6 shows that Jeffrey Gall accosted him over his religious beliefs, but Exhibit 6 discusses work deliverables and makes

6

no reference to Islam, Madson, or any threatening behavior. *See* Compl. at 20; Ex. 6. Similarly, Madson contends Exhibits 8, 10, and 11 show that several employees made disparaging comments about protected characteristics. *See* Compl. at 21. These Exhibits do not mention protected characteristics, nor do they plausibly suggest that any adverse employment action was connected to discrimination, as required by Title VII, Section 1981, the NYSHRL and NYCHRL. Finally, Madson alleges that Exhibit 15 "show[s] individuals including Candy Magee (Farmers Mutual Hail, a domestic insurance and reinsurance company), David Buffo (Dell Inc., a global technology company), Oscar Vergara (Verisk, a global risk modeling company), and Vincent Pomo (Everest Re, a global insurance and reinsurance company) marking plaintiff and his company as Jewish and calling for his elimination from the marketplace." The attached Exhibit is a social media post with a photograph of a concert venue, which makes no reference to Madson or his company whatsoever, yet which Madson describes as "evidence…of the wide-sweeping and publicly demonstrated anti-Semitism directed toward himself and his recently incorporated company."

The full substance of Madson's claims are difficult to ascertain, as is the relevance of many of the facts he alleges. The Complaint is almost 70 pages long, filled with meandering statements about the Central Intelligence Agency, purported torture during his institutionalization, an attempted assassination by domestic special interest groups, issues with various hotels, his divorce, and computer issues. *See, e.g.*, Compl. at 17-22. These tangents make it difficult to understand exactly how the facts alleged provide a basis for Madson's claims or which facts support which allegations. This deprives AIG of fair notice of the claims it must answer, and improperly leaves the defendant "forced to select the relevant material from a mass of verbiage." *Rodriguez v. Trs. of Columbia Univ. in the City of N.Y.*, No. 03 Civ. 4072 (TPG), 2006 WL 2521323, at *3 (S.D.N.Y. Aug. 30, 2006) (citation omitted) (striking a 301-page complaint with 327 pages of exhibits, which was filled with "redundant, argumentative, and … inflammatory material.").

7

As such, Madson's Complaint does not adhere to Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see Preacely v. U.S HUD*, 22-CV-6446 (AT) (KHP), 2023 WL 5020432, at *5 (S.D.N.Y. May 9, 2023) (dismissing *pro se* complaint containing "hyperbolic and unsupported accusations that do not appear connected to any conduct by [defendants] or any plausible legal theory that could be brought against [defendants]"); *Mendes Da Costa v. Marcucilli*, 675 F. App'x 15, 17 (2d Cir. 2017) (affirming dismissal of "convoluted and repetitive" *pro se* complaint because while it did contain "some factual allegations. . . it [was] virtually impossible to link the various defendants to [plaintiff's] alleged injuries").

In any event, it is clear that Madson has failed to state a claim because he has failed to plead facts supporting the fourth element of a *prima facie* case of discrimination: that an adverse employment action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (applying the same prima facie case standards to Title VII and Section 1981 claims)).

To the contrary, the Complaint itself discloses a non-discriminatory reason for Madson's termination—he abandoned his job and failed to respond to multiple requests from Employee Relations for two weeks.  *See* Compl., Ex. 14. Because Madson fails to plead facts and circumstances that could give rise to an inference of discrimination, the Complaint must be dismissed.  *See Perez v. N.Y. Police*, No. 19-CV-8251 (LLS), 2020 WL 1330761, at *3 (S.D.N.Y. Mar. 23, 2020) (dismissing a *pro se* complaint for failure to state a claim "because the complaint is largely illegible and incoherent" and, thus, "the Court is unable to understand the nature of Plaintiff's claims").

**D.      Madson's Frivolous Claims Should Be Dismissed With Prejudice.**

Courts regularly dismiss incoherent complaints with allegations that are "fanciful, fantastic or delusional," and are "highly suggestive of paranoia and mental instability." *Rogers v. U.S. Dep't of the Treasury*, No. 5:21-CV-1351 (DNH/ML), 2022 WL 3228185, at *2, *4 (N.D.N.Y. July 13, 2022), *adopted*, 2022 WL 3226349 (N.D.N.Y. Aug. 10, 2022); *see also Morse v. United States Postal Serv.*, No. 18-CV-6184 CJS, 2018 WL 3575654, at *5 (W.D.N.Y. July 25, 2018) (dismissing plaintiff's complaint without an additional opportunity to amend where the plaintiff blamed "the U.S. Postal Service and other 'adversaries' for a vast conspiracy against her and her children that involves poisoning of food, electronic surveillance and gunshots"); *Khalil v. United States*, No. 17-CV-2652 (JFB)(SIL), 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (dismissing the complaint without leave to amend where plaintiff alleged a "broad conspiracy involving surveillance of and interference with his life by the United States and various government actors" because his allegations were "irrational [and] wholly incredible"); *Salaverria v. Am. Airlines, Inc.*, No. 21-CV-9272 (LTS), 2022 WL 889835, at *1 (S.D.N.Y. Mar. 25, 2022) (dismissing a *pro se* complaint as frivolous where plaintiff alleged that American and Alaska Airlines violated his rights by participating in unwarranted surveillance of him and disclosing his personal information). Indeed, courts have the inherent power to dismiss a case, *sua sponte*, if an action is frivolous. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362 (2d Cir. 2000); *compare* 28 U.S.C. § 1915(e)(2)(B)(i); *see* Order to Amend at 1 (ECF 6) ("The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fees, if it determines that the action is frivolous.").

Here, Madson's factual allegations are "largely incoherent, irrational, or wholly incredible." *Salaverria*, 2022 WL 889835, at *4. "District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where

9

it would be futile." *Id.*; *see Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin*, 861 F.2d at 42. And in this case, Madson has already had one opportunity to amend, and has failed to comply with specific instructions from this Court. Accordingly, this time the Court should dismiss the complaint with prejudice. *Barsella v.*, 135 F.R.D. at 66–67.

## CONCLUSION

The Second Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
February 28, 2024

Respectfully submitted,

PAUL HASTINGS LLP

By: /s/ Patrick W. Shea

Patrick W. Shea
patrickshea@paulhastings.com
200 Park Avenue
New York, New York  10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 319-4090

*Attorneys for Defendant*
American International Group, Inc

10

## CERTIFICATE OF SERVICE

    I hereby certify that, on February 28, 2024, a copy of the foregoing Memorandum of Law in Support of Defendant American International Group LLC's Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*Allison Talker*
_____
Allison Talker